# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| KATHY MCCATHIE, *Plaintiff*, v. JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER, INC., *Defendants*. | Case No. 4:22-cv-00300-RSB-CLR |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

<b>Page</b>

I. INTRODUCTION ...............................................................................................1

II. PROCEDURAL BACKGROUND.....................................................................2

III. ARGUMENT......................................................................................................3

    A. Legal Standard. ........................................................................................3

    B. Plaintiff Has Failed to Establish Product Identification. ..........................4

        1. Plaintiff's FAC Fails to Identify the Sunscreen Products Allegedly Used or Plausibly Plead That Any Such Products Contained Benzene. ..................................................................4

        2. Documents Referenced in Plaintiff's FAC Contradict Her Claims. ...............................................................................6

    C. Plaintiff Also Fails to Plausibly Allege Causation. ................................10

    D. Plaintiff's Claims Fail as a Matter of Law. .............................................12

        1. Plaintiff Does Not Plausibly Plead Product Identification or Causation, and Therefore Cannot Establish Essential Elements of Each Cause of Action. ..............................................................12

        2. Plaintiff's Purported Claim for Misrepresentation Fails to Meet the Requisite Heightened Pleading Standard...............................13

IV. CONCLUSION.................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Vintage Pharmaceuticals LLC*,
   No. 5:18-cv-00329, 2019 WL 542981 (M.D. Ga. Feb. 11, 2019) ........................................... 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................. 3

*In Re: Atlas Roofing Corp. Chalet Shingle Products Liability Litig.*,
   No. 1:13-md-2495, 2018 WL 2930079 (N.D. Ga. June 8, 2018) ........................................... 13

*Bailey v. Monaco Coach Corp.*,
   350 F. Supp. 2d 1036 (N.D. Ga. 2004) .................................................................................... 5

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................. 4

*Bishop v. Bombardier, Inc.*,
   399 F. Supp. 2d 1372 (M.D. Ga. 2005) .................................................................................... 5

*Bodle v. Johnson & Johnson Consumer Inc.*,
   No. 21-cv-7742 (N.D. Cal. Feb. 24, 2022) ..................................................................... *passim*

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.*,
   116 F.3d 1364 (11th Cir. 1997) ................................................................................................ 7

*Bryant v. Avado Brands Inc.*,
   187 F.3d 1271 (11th Cir. 1999) ................................................................................................ 6

*Cash v. LG Electronics, Inc.*,
   804 S.E.2d 713 (Ga. Ct. App. 2017) ...................................................................................... 13

*Deloach v. BAC Home Loans Servicing, LP*,
   No. 1:10-cv-3045, 2010 WL 11647033 (N.D. Ga. Dec. 10, 2010) ........................................ 14

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
   843 F.3d 1257 (11th Cir. 2016) ........................................................................................ 13, 14

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
   130 F.3d 1381 (10th Cir. 1997) ................................................................................................ 7

*Griffin Indus., Inc., v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) ................................................................................................ 7

*Henderson v. Sun Pharmaceuticals Industries, Ltd.*,
   809 F. Supp. 2d 1373 (N.D. Ga. 2016) ............................................................................. 3, 6, 12

*Horsley v. Feldt*,
   304 F.3d 1125 (11th Cir. 2002) ................................................................................................. 7

*Hughes v. Stryker Sales Corp.*,
   423 Fed. Appx. 878 (11th Cir. 2011) ........................................................................................ 5

*Lamm v. State St. Bank & Tr.*,
   749 F.3d 938 (11th Cir. 2014) ................................................................................................. 13

*McGaffin v. Cementos Argos S.A.*,
   No. 4:16-CV-104, 2017 WL 150501 (S.D. Ga. Jan. 13, 2017) ............................................... 12

*Reese v. Herbert*,
   527 F.3d 1253 (11th Cir. 2008) ............................................................................................... 14

*Starship Enters. Of Atlanta, Inc., v. Coweta Cty.*,
   708 F.3d 1243 (11th Cir. 2013) ................................................................................................. 6

*Whitehead v. Green*,
   879 S.E. 2d 698 (Ga. 2022) ...................................................................................................... 12

*Williams v. St. Jude Medical, S.C., Inc.*,
   No. 1:16-cv-04437, 2017 WL 11113322 (N.D. Ga. Oct. 19, 2017) ......................................... 14

*Ziemba v. Cascade Int'l Inc.*,
   256 F.3d 1194 (11th Cir. 2001) ............................................................................................... 13

**Statutes**

28 U.S.C. §§ 1332(a), 1441, and 1446 .............................................................................................. 2

**I.      INTRODUCTION**

Plaintiff Kathy McCathie, now for the second time, submits a pleading which fails to plausibly assert any claims for injuries she allegedly sustained at various, unconnected points in time—in January 2018, January 2021, May 2021, and January 2022—as a purported result of her use of yet unidentified Neutrogena® sunscreen products. *See* Plaintiff's First Amended Complaint ("FAC") (Dkt. 17) at ¶¶ 18-19, 21-25. At best, Plaintiff's FAC and the exhibits attached thereto—which are uncertified and wholly unauthenticated—demonstrate that Plaintiff ***may*** have purchased certain sunscreens that were subject to a recall. However, there is no plausible allegation that each of the sunscreen products subject to that voluntary recall contained benzene—the purported defect. Nor is there any plausible allegation that any such product caused Plaintiff's alleged injury, as each of the purported purchases identified were made in mid-2021— ***three years after*** her first, alleged injury in January 2018—making any purported causal link a sheer impossibility.

Despite being fully briefed regarding the pleading deficiencies in her initial Complaint—as asserted in JJCI's initial Motion to Dismiss (Dkt. 4) and opposition to Plaintiff's Motion for Leave to Amend (Dkt. 13)—Plaintiff continues to rely on the same bald and conclusory allegations that simply miss the mark and fail to set forth each of the core elements of her claim. Plaintiff does not plead sufficient product identification information—i.e., what sunscreen products did Plaintiff use, when, with what frequency, etc. Indeed, nowhere in Plaintiff's 131 paragraph FAC does Plaintiff identify a sunscreen she actually used at any point in time—not by product line, SPF value, container size, purchase location, lot number, UPC code, or any other identifiable fact related to the products Plaintiff vaguely claims she used for twenty-seven years. FAC ¶ 30. Nor does Plaintiff plausibly allege that she ever purchased or used a sunscreen product actually containing benzene, or that benzene was systematically present in JJCI's sunscreen products at

any point in time.

Plaintiff similarly fails to identify any causal (or even temporal) link between her purported use of such products and her alleged injury—skin cancer—which is not in any way suggestive of benzene exposure. By extension, she has also failed to plausibly allege exposure to benzene from any sunscreen products at a level and for a duration that could have proximately caused any purported injuries. Despite her conclusory allegations, Plaintiff fails to plausibly allege that she suffered any injuries *as a result of* her use of any allegedly defective sunscreen product, and indeed the exhibits attached and incorporated to her FAC blatantly contradict that allegation. Further, her misrepresentation claim fails to meet Rule 9(b)'s heightened pleading standard.

As Plaintiff has already been given an opportunity to cure her pleading, on notice of these deficiencies, the FAC should be dismissed with prejudice and without further leave to amend.

## II. PROCEDURAL BACKGROUND

Plaintiff initially filed her Complaint in the State Court of Chatham County of the State of Georgia. Defendants removed the action to this Court on December 16, 2022, pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446. *See* Dkt. 1. On December 23, 2022, Defendants timely moved to dismiss Plaintiff's Complaint. *See* Dkt. 4. On January 6, 2023, Plaintiff filed a 2-page brief in opposition to Defendants' initial motion, effectively conceding that her Complaint failed to satisfy federal pleading standards (Dkt. 7 at 1), and submitting a proposed amendment to her Complaint, in the form of an addendum to same. *See* Dkt. 7-3. Plaintiff simultaneously sought leave to amend her Complaint, attaching for the Court's consideration her proposed amendment/addendum. *See* Dkt. 8. Defendants opposed Plaintiff's request for leave on the grounds that the proposed amendment failed to cure the deficiencies identified in their Motion to Dismiss, and would, therefore, be futile. *See* Dkt. 13.

On February 3, 2023, noting that Plaintiff was within the time to file an amended complaint as of right pursuant to Rule 15(a), this Court granted Plaintiff leave to amend and directed Plaintiff to file a true amended pleading, not "multiple piecemeal complaints that reference one another." *See* Dkt. 16 at 4 (citation omitted).  As Plaintiff's amended pleading would supersede the original Complaint, the Court ruled that JJCI's motion was moot, but specifically noted that JJCI would be entitled to further challenge Plaintiff's amended pleading, on the same grounds previously asserted.  *See* Dkt. 16 at 4 ("Defendants may respond as permitted by the Federal Rules of Civil Procedure, and nothing in this Order shall be construed as preventing them from raising their futility arguments as a motion under Rule 12(b).").

Plaintiff thereafter filed her FAC on February 16, 2023 (*see* Dkt. 17), which essentially is a combined version of her initial pleading, her proposed amended complaint (filed with her motion seeking leave), and just a single further allegation regarding Plaintiff's prior communication with JJCI regarding its recall. *See* FAC ¶ 35. As Plaintiff's prior Complaint and proposed addendum thereto failed to state a claim, as does her FAC.

### III.     ARGUMENT

#### A.     Legal Standard.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  The claims must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (citation omitted).  "Labels and conclusions" will not suffice. *Id.*  "When evaluating the sufficiency of a plaintiff's complaint, the court makes reasonable inferences in favor of the plaintiff, but is not required to draw the plaintiff's inferences . . . [and] does not accept as true 'unwarranted deductions of fact' or legal conclusions contained in a complaint." *Henderson*

3

*v. Sun Pharmaceuticals Industries, Ltd.*, 809 F. Supp. 2d 1373, 1377 (N.D. Ga. 2016) (citations omitted). The court must grant dismissal where a plaintiff has not adequately "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### B. Plaintiff Has Failed to Establish Product Identification.

#### 1. Plaintiff's FAC Fails to Identify the Sunscreen Products Allegedly Used or Plausibly Plead That Any Such Products Contained Benzene.

Despite being in the best (and possibly only) position to know the products she used, and despite having been fully briefed as to the product information necessary to satisfy her pleading burden, Plaintiff fails to identify any specific sunscreen product she used at any point in time during the claimed "twenty-seven years" she allegedly used sunscreen—not by product line, bottle size, SPF content, lot number, when purchased or used, or any other detail that is in Plaintiff's possession that would allow JJCI to defend this case. FAC ¶ 30. Instead, she disregards the most basic element of her claims and merely indicates that she used "recalled Neutrogena® products," and separately lists out in a footnote the product lines that were subject to the referenced voluntary recall conducted by JJCI—a list that even includes an Aveeno product line, which is certainly not a "recalled Neutrogena® product." FAC ¶ 11 n.1.

Plaintiff similarly fails to plausibly allege that any sunscreen product she did use, yet unknown to Defendants, actually contained benzene—the alleged defect at the core of her claims. She appears to rely on the inaccurate presumptions that (i) although benzene was detected at various concentrations in only *specific batches* of sunscreen products attributable to different manufacturing entities (*see* FAC ¶ 16), and (ii) although there was a recall of only *certain lots* of JJCI's sunscreen products where benzene was detected in only *some samples* of product (*see* FAC ¶ 15), all sunscreen products she used, though unidentified in any way, contained benzene at concentrations sufficient to cause injury. Simply because JJCI issued a recall does not mean that

4

Plaintiff used a benzene-containing product, as she appears to suggest. *See Hughes v. Stryker Sales Corp.*, 423 Fed. Appx. 878, 880-881 (11th Cir. 2011) (affirming district court's rejection of plaintiff's reliance on a recall letter to demonstrate defect, particularly where recall letter clearly stated that internal testing revealed problems in only "some cases" and specifically indicated that individuals were "not at an increased risk"—just as JJCI's recall letter does here); *Bishop v. Bombardier, Inc.*, 399 F. Supp. 2d 1372 (M.D. Ga. 2005) (noting that the fact of a watercraft having been subject to two product recalls did not provide evidence of a defect); *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1045 (N.D. Ga. 2004) (noting that a manufacturer's recall notice "does not admit a defect in a particular product, but refers to the possibility of a defect in a class of products.").

Plaintiff's allegations amount to nothing more than a false syllogism that sidesteps the core questions at the crux of her claims—*which* recalled products did Plaintiff use and *did* they contain benzene? Those questions can only begin to be answered with product identification information, and this Court should ignore Plaintiff's invitation to make inferential leaps where she has failed to plead even the most basic elements of her claims.

In a remarkably similar case recently dismissed with prejudice by the Northern District of California, a plaintiff asserted claims individually and on behalf of a putative class of unnamed individuals who allegedly experienced undefined personal injuries from their purported use of unidentified Neutrogena® sunscreens. *See Bodle v. Johnson & Johnson Consumer Inc.*, No. 21-cv-7742 (N.D. Cal. Feb. 24, 2022) (annexed to Declaration of Christopher Daniels ("Daniels Decl.") as Ex. A). That court held that plaintiff failed to "establish injury or causation as required to sustain **any** of [her] claims because [she] ha[d] not plausibly alleged that (a) she ever purchased or used an allegedly contaminated sunscreen product, (b) that she was exposed to an allegedly

5

contaminated sunscreen product at a level and for a duration that could plausibly cause her disease, nor (c) that she was diagnosed with AML *after* she used an allegedly contaminated sunscreen product." *Id.* at 1 (emphasis original).  There, even though plaintiff had identified the sunscreen she used by name—which Plaintiff here does not do—that was still "[in]sufficient for the [c]ourt to draw an inference that she used an allegedly contaminated product." *Id.* at 3.  The court reasoned that although benzene was detected in a *certain* lot number and UPC code of a batch of sunscreen of the same product line identified, "Plaintiff [did] not allege that she purchased or used such a product with a corresponding Lot or UPC number or a matching expiration date" and failed to "allege any facts at all as to *when* she purchased the product she identifies." *Id.*  Thus, the Court was "unable to draw an inference [that she] used a benzene-contaminated product." *Id.*

Here, and unlike in *Bodle,* Plaintiff does not identify **any** sunscreen product she used with **any** specificity, let alone with the specificity required for the Court to infer that she used a benzene-containing product attributable to JJCI.  As in *Bodle,* "[a]t most, Plaintiff alleged only that . . . JJCI 'sold[] products that *may* contain dangerous levels of benzene. . ." which is "insufficient to establish a plausible claim that [plaintiff] purchased a contaminated product." *Id.*  Even applying the most liberal pleading requirements, Plaintiff fails to allege facts sufficient to state a claim.

2. Documents Referenced in Plaintiff's FAC Contradict Her Claims.

While Plaintiff fails to attach to her FAC all of the references she cites to support her claims, a review of those references demonstrates that they actually contradict any attempt, however paltry, to allege product identification.[1]  First, Plaintiff relies on a Citizen Petition, which

---

[1] To determine whether Plaintiff has stated a claim for relief, the Eleventh Circuit has held that it may consider the "face of the complaint and attachments thereto." *Starship Enters. Of Atlanta, Inc., v. Coweta Cty.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013).  Moreover, "when considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Henderson v. Sun Pharmaceuticals Industries, Ltd.*, 809 F. Supp. 2d 1373, 1377 (N.D. Ga. 2016) (citations omitted); *see also Bryant v. Avado Brands Inc.*, 187 F.3d 1271, 1279-80 (11th Cir. 1999).  The court may also consider

6

stated that Valisure—an online pharmacy—had "tested and detected high levels of benzene, a known human carcinogen, in several brands and batches of sunscreen containing [certain] active pharmaceutical ingredients." FAC ¶13 (misquoting and improperly citing the Citizen Petition, annexed to Daniels Decl. at Ex. B). Plaintiff disingenuously suggests that Valisure only tested sunscreen "[made by J&J]," which is belied by the Citizen Petition itself, which includes pages of tables of Valisure's test results, identifying various sunscreen products by brand, product line, type (lotion or spray), SPF value, lot number, expiry date, and active ingredients, along with the amount of benzene detected, if any, in the specific lots sampled. See FAC ¶ 13; Daniels Decl., Ex. B, at 13-15.[2] Not only does Plaintiff mischaracterize its scope, she also conveniently fails to note that the Petition also includes a table of the various batches of sunscreen, including Neutrogena® brand sunscreen products, where ***no benzene was detected.*** See Daniels Decl., Ex. B, Attachment A.

Plaintiff's distortion of the Citizen Petition is particularly egregious in her assertion that Valisure "petitioned the FDA, asking for a recall of the sunscreen," without further qualification as to what is meant by "the sunscreen." FAC ¶13. A plain reading of the Petition reveals that Valisure only "request[ed] a recall of ***identified batches of sunscreen products***" (Daniels Decl.,

---

documents attached to a defendant's motion to dismiss if they are referred to in the complaint, are central to the plaintiff's claim, and their authenticity is undisputed. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1366-69 (11th Cir. 1997); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). If the rule were otherwise, Plaintiff's deficient claims could survive a motion to dismiss simply by virtue of her not attaching a dispositive document or attaching only portions of a document upon which she relied. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997). Here, Plaintiff herself references the Valisure Citizen Petition, and includes a hyperlink at which same can be accessed. Thus, the petition itself, annexed to Daniels Decl. at Ex. B in full, is subject to judicial notice.
[2] While the Court must accept alleged facts as true here, that duty does not "require [the Court] to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the [referenced] exhibits contradict the general and conclusory allegations of the pleading, the exhibit governs." *Griffin Indus., Inc., v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). It follows that if the Court may consider public records and documents properly attached to a defendant's motion, the same rings true if those documents contradict Plaintiff's conclusory allegations. Otherwise, Plaintiff would be rewarded for her failure to attach documents she herself relies upon in asserting her claims. *See Brooks,* at 1369 (noting that where plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents on a Rule 12(b)(6) motion without converting same to a motion for summary judgment) (citation omitted).

7

Ex. B at 2), not a recall of all sunscreen products "[made by J&J]" as suggested. FAC ¶ 13.[3]

Plaintiff also misrepresents JJCI's voluntary recall notice and contradicts herself in the process. Notably, while Plaintiff correctly asserts that JJCI issued a voluntary recall (FAC ¶ 14), nowhere in its recall notice does JJCI generally "admit[] that it detected the presence of benzene in the recalled products through testing." FAC ¶ 15; *see also* JJCI's Recall Notice cited at FAC ¶ 17, n.6 and annexed to Daniels Decl. as Ex. C. Rather, the notice specifically states that "[w]hile benzene is not an ingredient in any [JJCI] sunscreen products, it was detected in *some samples of the impacted* aerosol sunscreen finished products." Daniels Decl., Ex. C at 2.

Plaintiff has not plausibly pleaded that *all* of JJCI's recalled sunscreen products contain benzene. Indeed, the *only* products that can be inferred to contain benzene are those specific lots of sunscreen products tested by Valisure and identified in the Citizen Petition as containing benzene. *See* Daniels Decl., Ex. B at 15-17; *see also* Daniels Decl., Ex. A at 2 (*Bodle*). Neither the FAC nor the Citizen Petition contend that benzene was systematically used or that the recalled sunscreen products were designed to incorporate benzene. *See generally id*. Rather, the FAC notes that "benzene is not an ingredient in any of [JJCI's] sunscreen products," and that JJCI "investigat[ed] the cause of this issue." FAC ¶ 17. More importantly, the Citizen Petition itself advises that the "presence of benzene appears to be from contamination in the identified sunscreen products" and that "[t]here was *significant variability from batch to batch, even within a single brand, underscoring the importance of batch-level chemical analysis*[.]" Daniels Decl., Ex. B at

---

[3] *See also* Daniels Decl., Ex. B at 10 (Citizen Petition recommended "recalls on the *affected batches of products*") (emphasis added); 15-16 ("This Petition seeks to have the Commissioner and FDA request recalls for the *identified batches of sunscreen products*" referring to just "40 batches" of sunscreen products identified in its Petition and noting that "*there is significant batch-to-batch variation in benzene content, but many batches of sunscreen contain no detectable benzene* and thus recalls should not overly burden the distribution chain or impact the availability of the sunscreen for use by the public.") (emphasis added); 17 ("Valisure would maintain that it is important for information provided to the public to clarify and underscore that this contamination *has not been detected in all sunscreen products* and that unadulterated sunscreen products are available and should continue to be utilized.") (emphasis added).

8

8 (emphasis added).

The exhibits Plaintiff does choose to attach to her FAC do not save her claims. Plaintiff submits uncertified "proofs of purchase" which consist of emails from two retailers seemingly discussing JJCI's voluntary recall. The Amazon email (Dkt. 17-1 at 2) merely states "[w]e have learned of a **potential safety issue** that **may** impact your Amazon purchase" (emphasis added). This email is insufficient to establish that a product purchased by Plaintiff contained benzene (and indeed Plaintiff does not otherwise make such a showing). Similarly, the Sam's Club email (Dkt. 17-1 at 3) states:

> We want to let you know about a **potential issue** with this product. What's the issue? We were notified that Johnson and Johnson, in cooperation with the U.S. Food and Drug Administration (FDA), has Initiated a recall of Neutrogena and Aveeno Aerosol Sunscreen products due to testing identifying low levels of benzene in **some samples** of these products (emphasis added).

Again, this document does not establish that the product Plaintiff purchased contained benzene. It simply restates the reason for the recall, and mimics the sentiment of the recall itself—that only certain lots of product were potentially affected—not that each such product actually contained benzene. Further, these documents do not show that Plaintiff even used the products purportedly identified in the email correspondence. Nor do the photographs attached to her FAC as Exhibit B. *See* 17-2 at 3. Moreover, only one lot number is depicted in the photographs Plaintiff provided—though it is not possible to identify from the photograph which product is associated with that lot number. *See id.* Nevertheless, that lot number is not identified as a product that had been tested by Valisure, and certainly not one that was identified as containing any benzene. *See* Daniels Decl., Ex. B. Thus, even accepting Plaintiff's assertions as true, she has not adequately alleged that the recalled sunscreen products she purportedly purchased (or used) actually contained benzene.

The same is true with respect to Plaintiff's bald allegation that JJCI assigning Plaintiff a

9

"reference number" to refer to when contacting JJCI regarding her claim is indicative of anything. FAC ¶ 35. That communication from JJCI clearly directs Plaintiff to provide the reference number so that records were easier to access upon contact, and specifically demonstrates the importance of product-identification information by asking that Plaintiff have the product with her when contacting JJCI so that product information was ascertainable. *See* 17-3 at 2.

Plaintiff has chosen to yet again ignore that product-identification is a core element of her purported claims and has failed to allege that she used any batch of sunscreen product in which benzene was detected (i.e., with a corresponding product line, lot number, UPC code, matching expiration date, or otherwise) and thus has failed to plausibly plead that any product she used ever contained benzene. Plaintiff's FAC fares no better in establishing causation.

### C. Plaintiff Also Fails to Plausibly Allege Causation.

Even if Plaintiff were able to identify a product used, she has not plausibly traced any injury to JJCI's conduct. Indeed, Plaintiff asserts that she purchased unspecified products in February 2021 through early July 2021. FAC ¶ 32. The Amazon email dated July 15, 2021 appears to state that Plaintiff purchased the product on April 15, 2021. *See* Dkt. 17-1 at 2. The Sam's Club email of the same date states that their records reflect a "recent" purchase of certain Neutrogena Beach Defense sunscreens. *See* Dkt. 17-1 at 3. Yet, Plaintiff's diagnoses began in 2018 (FAC ¶¶ 37-41). Plaintiff makes no attempt at connecting her purported use of any sunscreen product to these injuries, or explaining how it is possible that the sunscreen products at the crux of her claims could have caused her skin cancer, when she purchased them well after her injury. *See* Ex. A to Daniels Decl. (*Bodle*) at 3-4 (finding that although plaintiff had alleged that her use of sunscreen products was the "sole cause or a substantial factor in causing her cancer," she had failed to "provide any information as to the timing of her diagnosis and her alleged use of Defendant's contaminated product to establish a plausible chain," thus the court "[could] not ascertain whether plaintiff's

cancer diagnosis *predated* her exposure to defendant's allegedly contaminated products, which would render her alleged causal chain implausible.").

Plaintiff here merely generalizes all cancers and asserts that JJCI "created a greater risk of cancer amongst the product's users" and fails to plausibly allege that melanoma is even a type of cancer that can be caused by benzene exposure—which it is not. FAC ¶ 21. Plaintiff's thinly veiled, red herring attempt to rectify this omission by asserting that an unnamed "medical provider told her that she should pursue her skin cancer claims against the Defendants because they sold contaminated product the benzene in which actually caused the very thing their product was intended to prevent" is insufficient to save her claims. *Id.* at ¶ 47. Even taken at face value, the pursuit of litigation is a far cry from a plausible allegation that **Plaintiff's** exposure to benzene from specific sunscreen products Plaintiff used caused **Plaintiff's** skin cancer.

Indeed, the FAC utterly fails to plausibly plead that **all** of JJCI's sunscreen products have consistently contained benzene, or that the benzene content in **any** sunscreen product Plaintiff allegedly used caused her to be exposed to sufficient concentrations of benzene to have caused her injury. Of note, the Citizen Petition states that "benzene has long been directly associated with cancer in humans and classified as a 'known human carcinogen' with *persistent exposure* as low as .8 ppm."[4] Daniels Decl., Ex. B at 6 (emphasis added). Even assuming that Plaintiff *had been* exposed to benzene from a contaminated sunscreen product, which Plaintiff has not plausibly alleged, Plaintiff *still* fails to assert when that exposure happened or that that any such exposure was at a level or "persistent" enough to have caused her specific injury.[5] Thus, despite her

---

[4] On this point, the Citizen Petition cites to a publication discussing leukemia, not cancer of the skin. *See* Daniels Decl., Ex. B n. 20. Indeed, the Citizen Petition does not identify any association between benzene exposure and skin cancer. Nor does Plaintiff in her FAC.

[5] *See* Daniels Decl., Ex. A at 3-4 (*Bodle*) (Even assuming plaintiff used a sunscreen that was from a contaminated batch, that product had an average benzene level "significantly less than the 'persistent' exposure at '.8 ppm' that the Valisure Petition cited as linked to cancer."); *see also* Daniels Decl., Ex. C at 2 (noting that daily exposure to benzene in affected sunscreen products "would not be expected to cause adverse health consequences").

conclusory allegations, even when accepted as true, the FAC fails to plausibly plead that Plaintiff's diagnoses were *caused by* her use of *benzene-containing* sunscreen products, which is fatal to her claims.

> **D.    Plaintiff's Claims Fail as a Matter of Law.**
>
>    1.    <u>Plaintiff Does Not Plausibly Plead Product Identification or Causation, and Therefore Cannot Establish Essential Elements of Each Cause of Action.</u>

Each cause of action in the FAC fails for the same reason—Plaintiff has not plausibly pleaded threshold requirements of product identification or causation. Regardless of the claims asserted, whether an allegedly defective product caused a plaintiff's alleged injuries is an essential element of all product liability cases, and each of Plaintiff's claims. *See Henderson v. Sun Pharmaceuticals Industries, Ltd.*, 809 F. Supp. 2d 1373, 1378 (N.D. Ga. 2016) (as to Count One (Product Liability – Design Defect) noting that "plaintiff must show that (1) defendant was a manufacturer of the product; (2) the product, when sold, was not merchantable and reasonably suited to the use intended, and (3) the product's defective condition proximately caused the plaintiff's injury."); *Whitehead v. Green*, 879 S.E. 2d 698, 714 (Ga. 2022) (as to Count Two (Product Liability – Failure to Warn) and Count Four (Negligent Failure to Warn) noting that "whether based upon negligence or strict liability," "proximate causation is 'a necessary element of a failure to warn claim'); *McGaffin v. Cementos Argos S.A.*, No. 4:16-CV-104, 2017 WL 150501, at *3 (S.D. Ga. Jan. 13, 2017) (as to Count Three (Negligence/Negligent Design, Manufacture & Sale) noting that "[t]o prove negligent design and manufacture, Plaintiffs must establish four elements" including "a legally attributable causal connection between the conduct and the resulting injury"); *Allen v. Vintage Pharmaceuticals LLC*, No. 5:18-cv-00329, 2019 WL 542981, at *4 (M.D. Ga. Feb. 11, 2019) (as to what appears to be a misrepresentation count, though not separately identified, noting that misrepresentation claims require proof of justifiable or

reasonable reliance and causation); *Cash v. LG Electronics, Inc.*, 804 S.E.2d 713, 718 (Ga. Ct. App. 2017) (as to Count 6 (Breach of Implied Warranty of Merchantability) noting that to prove a claim for breach of implied warranty of merchantability, plaintiff must prove causation); *In Re: Atlas Roofing Corp. Chalet Shingle Products Liability Litig.*, No. 1:13-md-2495, 2018 WL 2930079, at * 3 (N.D. Ga. June 8, 2018) (as to Count 6 (Breach of Implied Warranty of Merchantability) and Count 7 (Breach of Implied Warranty of Fitness) noting that proximate causation is a necessary element of implied warranty claims). Thus, Plaintiff's claims fail because she has not plausibly pleaded their essential elements.

### 2. Plaintiff's Purported Claim for Misrepresentation Fails to Meet the Requisite Heightened Pleading Standard.

Plaintiff's claim for misrepresentation (though not separately identified in the FAC) also fails to meet the heightened pleading requirements of Rule 9(b), which requires Plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) (noting that misrepresentation claims are subject to Rule 9(b)'s heightened pleading standard). To adequately plead a misrepresentation claim, a plaintiff must allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the context of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016); *see also Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Far from asserting any specific facts to support her claim, Plaintiff alleges in a conclusory fashion that JJCI "falsely and fraudulently represented to the public that the recalled products had been tested and were safe and effective" (FAC ¶ 99), without identifying a single representation

13

reflecting the same. Conspicuously absent from the FAC are any specific statements or omissions. Nor does Plaintiff identify how or when JJCI purportedly obtained knowledge of the alleged defect, the "time and place" any misrepresentations were allegedly made, or the "content of such statements and the manner in which they misled" her. *In re Galectin,* 843 F.3d at 1269. Nor does Plaintiff identify when she actually purchased any sunscreen products such that she could demonstrate reliance on any alleged misrepresentations. Without such factual allegations, Plaintiff does not, and cannot, plausibly allege a claim for misrepresentation. *See Williams v. St. Jude Medical, S.C., Inc.*, No. 1:16-cv-04437, 2017 WL 11113322, at * 10 (N.D. Ga. Oct. 19, 2017) (misrepresentation claim failed because *inter alia* plaintiff "has not identified the 'what' or 'where', including the precise statements allegedly made by the [defendants], the time and place of these statements, the person responsible for making them and to whom they were made", and "[w]ithout such particularity, the Court could not evaluate Plaintiff's claim.").

Accordingly, Plaintiff's misrepresentation claim should be dismissed for failure to satisfy the heightened pleading requirements of Rule 9(b).

## IV.     CONCLUSION

For the foregoing reasons, JJCI respectfully requests that this Court dismiss Plaintiff's FAC in its entirety, with prejudice. [6]

---

[6] Any further leave to amend would be futile here, as Plaintiff has demonstrated her inability to cure the deficiencies identified above. *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (leave to amend, through "freely given when justice so requires" is "not an automatic right" and may be denied "where there is substantial ground for doing so, such as . . . futility of amendment."); *see also Deloach v. BAC Home Loans Servicing, LP*, No. 1:10-cv-3045, 2010 WL 11647033, at *2 (N.D. Ga. Dec. 10, 2010) (noting that "[f]utility may occur where, as the Defendant argues, an amended complaint contains similarly defective pleading as the original complaint").

| | |
|---|---|
| Date: March 2, 2023 | */s/ Christopher J. Daniels* <br> Christopher J. Daniels <br> Georgia Bar No. 113177 <br> BARNES & THORNBURG LLP <br> 3340 Peachtree Road, N.E., Suite 2900 <br> Atlanta, Georgia  30326-1092 <br> Telephone:  (404) 846-1693 <br> Facsimile:  (404) 264-4033 <br> cdaniels@btlaw.com <br><br> J.T. Larson, Jr. <br> Admitted *Pro Hac Vice* <br> BARNES & THORNBURG LLP <br> 11 S. Meridian Street <br> Indianapolis, Indiana 46204 <br> Telephone:  (317) 231-7729 <br> Email: jt.larson@btlaw.com <br><br> *Attorneys for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March, 2023, I electronically filed the foregoing DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system which will automatically send email notification of filing to all counsel of record.

*/s/ Christopher J. Daniels*
Christopher J. Daniels
Georgia Bar No. 113177